**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARCUS EDWARD PHILLIPS,** | ) | |
| **as Administrator of the Estate of** | ) | |
| **Susie Lucille Phillips, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:05-cv-934-T** |
| | ) | |
| **CITY OF OPP, ALABAMA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS,**
**TO STRIKE, AND TO LIMIT DISCOVERY**

Defendants City of Opp, Alabama, Officer Jason C. Blue, Officer David Harrell, and Chief Bill Shaw submit this Memorandum in support of their Motion to Dismiss, to Strike, and to Limit Discovery.

## I. STATEMENT OF THE CASE

This action arose from the homicide of Susie Lucille Phillips ("Phillips"). (See Doc. 1 at 2, ¶ 11.)  The plaintiff is Marcus Edward Phillips ("plaintiff").  (See Doc. 1 at 1, ¶ 2.)  He is the administrator of Phillips' estate.  (See Doc. 1 at 1, ¶ 2.)

The complaint makes the following factual allegations: On February 21, 2003, Officers Blue and Harrell responded to a motor vehicle collision in which Phillips' boyfriend, Marcellous Evans, rammed his vehicle into hers.  (See Doc. 1 at 1-2, ¶ 5.)  The officers could have arrested Evans for domestic violence and an outstanding warrant, but did not.  (See Doc. 1 at 2, ¶ 7.)  After she left the collision scene, Phillips was never seen again.  (See Doc. 1 at 2, ¶ 11.)  On March 30, 2005,

1

Evans confessed that he murdered Phillips three days after the collision.  (See Doc. 1 at 2, ¶¶ 10-11.)

The complaint was filed on September 30, 2005.  (See Doc. 1 at 1.)  Count One alleges a violation of 42 U.S.C. § 1983 and, maybe, 42 U.S.C. § 1985(3).  (See Doc. 1 at 3, ¶¶ 12-16.)  Count Two alleges Officers Blue and Harrell breached duties to arrest.  (See Doc. 1 at 4, ¶¶ 17-21.)  Count Three alleges the City of Opp and Chief Shaw failed properly to train and supervise Officers Blue and Harrell.  (See Doc. 1 at 4, ¶¶ 22-25.)

The complaint shows that this action was commenced later than *two years and seven months* after Phillips' death.  (See Doc. 1 at 2, ¶ 11.)

## II. COUNT ONE

Count One is entitled, "Violation of 42 USC 1983."  It attempts to state a claim for deprivation of civil rights under color of law.  It may also attempt to state a conspiracy claim under 42 U.S.C. § 1985(3).  For the reasons that follow, Count One should be dismissed.

### A. *Statute of Limitations*

All §§ 1983 and 1985(3) claims are barred by the statute of limitations.

The statute of limitations for §§ 1983 and 1985 claims is determined by the forum state's own statute of limitations for personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 280 (1985); Trawinski v. United Technologies, 313 F.3d 1295, 1298-99 (11th Cir. 2002).  Alabama's statute of limitations for personal injury

actions is two years. <u>See</u> Ala. Code § 6-2-38(*l*) (1975); <u>Lufkin v. McCallum</u>, 956 F.2d 1104, 1106 n.2 (11th Cir. 1992).

There is a tolling period available for the time between the date of death and the appointment of an administrator. <u>See</u> Ala. Code § 6-2-14 (1975). However, that period is limited to a maximum of six months:

> The time between the death of a person and the grant of letters testamentary or of administration, *not exceeding six months*, is not to be taken as any part of the time limited for the commencement of actions by or against his executors or administrators.

Ala. Code § 6-2-14 (1975) (emphasis added).

Paragraph 11 of the complaint alleges:

> In his statement to law enforcement, Evans admits to meeting up with Phillips on the evening of February 21, 2003, "after the domestic assault." *Evans claims Phillips was not killed until the early morning hours of February 24, 2003.* However, it is clear that Evans is the only person to see Phillips alive after the assault until the time of her death at his (Evans') hand. *Plaintiff maintains that Evans, in fact, killed Phillips shortly after the assault that occurred in Opp as part of an ongoing act of domestic violence perpetrated against Phillips.*

(Doc. 1 at 2, ¶ 11 (emphasis added).)

The complaint alleges that, at the latest, Phillips was killed during the early morning hours of February 24, 2003. Assuming the plaintiff used the entire six-month tolling period afforded by § 6-2-14, he had to commence this lawsuit within two years and six months of February 24, 2003. At the latest, the statute of limitations for the §§ 1983 and 1985(3) claims expired August 24, 2005. Because the complaint was not filed until September 30, 2005, those claims are time-barred. (<u>See</u> Doc. 1 at 1.)

The defendants move to dismiss Count One because it is barred by the statute of limitations.

## B.  Deprivation of Civil Rights Through Conspiracy

Paragraph 13 alleges, "Defendants … Blue and … Harrell … unlawfully deprived and/or **conspired** to deprive Susie Lucille Phillips of certain rights guaranteed to her by the Constitution and the Laws of the United States."  (Doc. 1 at 3, ¶ 13 (emphasis added).)

Civil rights conspiracy claims are governed by 42 U.S.C. § 1985(3):

> If two or more persons in any State or Territory conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws … the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The defendants deny that Count One actually pleads a civil conspiracy claim.  Count One's title identifies a § 1983 claim only, and its text never mentions § 1985(3) by name.  If Count One actually pleads a § 1985(3) claim, however, that claim should be dismissed.

First, Count One does not plead sufficient facts to support a conspiracy.  "In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required."  Fullman v. Graddick, 739 F.2d 553, 556 (11th Cir. 1984) (quoted with approval in Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003)).  "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed.  A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."  Fullman, 739 F.2d at 557.

4

Second, the intracorporate conspiracy doctrine bars a § 1985(3) claim against police officers and their municipal employer. "Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." Dickerson v. Alachua County Comm'n, 200 F.3d 761, 767 (11th Cir. 2000). "The doctrine applies to public entities such as the City and its personnel." Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001).

The defendants move to declare that Count One does not state a conspiracy claim. In the alternative, the defendants move to dismiss any conspiracy claim under the intracorporate conspiracy doctrine.


### C. Deprivation of Civil Rights Under Color of Law

From the text of Count One, it is clear that the plaintiff intends to state a claim under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (Lexis 2005).

The precise nature of the § 1983 claim is unclear. "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994).

Paragraph 13 alleges Officers Blue and Harrell, "unlawfully deprived and/or conspired to deprive Susie Lucille Phillips of certain rights guaranteed to her by the Constitution and the Laws of the United States."  (See Doc. 1 at 3, ¶ 13.) Paragraph 13 does not identify the specific constitutional and statutory rights that Officers Blue and Harrell allegedly violated.

The unnumbered paragraph between Paragraphs 13 and 14 provides some insight into the plaintiff's legal theory.  It alleges that, "Phillips was entitled to the fair and non-discriminatory application of the Alabama criminal statutes and the protection afforded her by the enforcement of laws enacted by the legislature of the State of Alabama and promulgated to protect the class of persons who are victims of domestic assault or violence."  (See Doc. 1 at 3.)

The unnumbered paragraph adds:

> It is believed and averred that the Defendant, the City of Opp, Alabama, maintains an official policy not to arrest an alleged perpetrator of domestic violence absent a representation by and from the victim that she will actively participate and aid in the prosecution of said criminal action and will sign/execute affidavits and complaints in the criminal court and appear and give testimony against the perpetrator at trial.

(Doc. 1 at 3.)

The defendants deny this allegation.  Not only is it untrue, but it also does not allege a violation of federal constitutional or statutory law.  It will not support a § 1983 claim.  See St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) ("The motion to dismiss will be granted if the complaint fails to allege the violation of a clearly established constitutional right.").

The next sentence of the unnumbered paragraph states:

It is further believed and averred that it is the custom or practice of the Defendant municipality, endorsed or approved by the City of Opp, *not to **vigorously** enforce* the domestic violence statutes in bi-racial situations and most especially in those instances where the alleged victim is a white male and the alleged perpetrator is a black male.

(Doc. 1 at 3 (emphasis added).)

The defendants also deny this allegation.  Although the latter quotation comes close to stating a Fourteenth Amendment Equal Protection claim against the City of Opp, it still falls short.

Equal Protection violations may occur in three circumstances: (1) when "a statute discriminates on its face," (2) when "neutral application of a facially neutral statute has a disparate impact," and (3) when defendants are "unequally administering a facially neutral statute."  E & T Realty v. Strickland, 830 F.3d 1107, 1112 (11th Cir. 1987).  The third alternative fits the plaintiff's allegation closest.

To establish an Equal Protection violation under the third alternative, a plaintiff must prove (1) that she is similarly situated with other citizens who received more favorable treatment and (2) her discriminatory treatment was based on a constitutionally protected factor, such as race.  See Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001).

In this case, the complaint alleges that Phillips was white and that her attacker, Marcellous Evans, was black.  (See Doc. 1 at 3.)  The complaint alleges that the City of Opp had a custom or practice "*not to **vigorously** enforce* the domestic violence statutes in bi-racial situations."  (See Doc. at 1 at 3 (emphasis added).)  This allegation does not state an Equal Protection claim.

First, Count One does not allege that the City had a custom or practice of *completely* refusing to enforce the domestic violence statute in *all* bi-racial

situations.  By implication and by admission, the complaint concedes that the City enforces domestic violence laws in some bi-racial situations.  For example, the complaint admits that the City's officers actually obtained arrest warrants against Marcellous Evans for the very incident about which the plaintiff complains.  (See Doc. 1 at 2, ¶ 8.)

Rather than complete non-enforcement, the plaintiffs' allegation is one of *non-vigorous* enforcement.  The very concept of *vigorous* versus *non-vigorous* enforcement of criminal laws in bi-racial situations, as a matter of simple logic, eliminates an Equal Protection claim.  A claim of *non-vigorous* enforcement necessarily concedes that the laws are, in fact, being enforced across all races at some level.

The fact that domestic violence laws are enforced in some bi-racial situations, but not others, necessarily establishes that factors other than race actually determine whether the law is enforced in a given situation.  To characterize enforcement as "non-vigorous" is merely to place a subjective, non-explanatory label on complex human events.  Such an allegation is too vague to state a constitutional claim.  See Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) ("a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory").

Furthermore, Count One does not allege that the City had a custom or practice of *vigorously* enforcing the domestic violence statute in *same-race* situations.  At rock bottom, there is no allegation that bi-racial incidents of domestic violence are treated differently than same-race incidents.

Most importantly, there is no allegation that a custom or policy of the City of Opp was the "moving force" behind a constitutional violation.  See City of Canton v. Harris, 489 U.S. 378, 389 (1989) ("A municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation.").

Count One does not allege a specific federal constitutional or statutory violation by Officers Blue or Harrell.  Although paragraph 13 claims the officers deprived Phillips "of certain rights guaranteed to her by the Constitution and the Laws of the United States," it never identifies which federal rights the individual officers allegedly violated.  (See Doc. 1 at 3, ¶ 13.)

To be clear, Count One does not allege that Officers Blue or Harrell actually followed the alleged custom or practice of non-vigorous enforcement in bi-racial situations.  In the absence of an underlying constitutional violation by the individual officers themselves, municipal liability can never arise.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

Finally, Count One does not mention Chief Bill Shaw at all.

The defendants move to dismiss Count One for failure to state a claim upon which relief can be granted.

### D.  Qualified Immunity

The complaint alleges that Officers Blue and Harrell and Chief Shaw acted within the scope of their police authority.  (See Doc. 1 at 1, ¶ 4.)  On that basis, they assert the defense of qualified immunity.

"While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss." St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002). "The motion to dismiss will be granted if the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002). "The right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Wilson v. Layne, 526 U.S. 603, 615 (1999).

"When qualified immunity is asserted in the context of a motion to dismiss, we look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." O'Rourke v. Hayes, 378 F.3d 1201, 1206 (11th Cir. 2004). "The scope of the review must be limited to the four corners of the complaint." St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

"If a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff has failed to allege the violation of a 'clearly established' right." GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).

In this case, Count One does not allege a violation of any federal constitutional or statutory right by Officer Blue, Officer Harrell, or Chief Shaw. In fact, Count One does not even mention Chief Shaw.

Although Count One alleges that Officers Blue and Harrell deprived, or conspired to deprive, Phillips of "certain rights guaranteed to her by the Constitution and the Laws of the United States," it never identifies those rights. (See Doc. 1 at 3, ¶ 13.)

The plaintiff has the burden to show that qualified immunity is not appropriate. See Harris v. Coweta County, 406 F.3d 1307, 1312-23 (11th Cir. 2005) ("The defendants having established their eligibility for qualified immunity, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate.").

"This circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).

"A district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity. To do so is to ignore both the heightened pleading standard for § 1983 claims that is the law of this circuit and the Supreme Court's call for a 'firm application of the Federal Rules of Civil Procedure' in cases where qualified immunity is asserted." GJR

Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) (quoting Butz v. Economou, 438 U.S. 478, 508 (1978)).

Even if the plaintiff had alleged that Officers Blue and Harrell violated Phillips' Fourteenth Amendment Equal Protection right by failing to arrest Evans, the officers would still be entitled to qualified immunity.  In Williams v. City of Montgomery, the United States District Court for the Middle District of Alabama granted a motion to dismiss based on qualified immunity under an identical theory. 21 F. Supp.2d 1360, 1367 (M.D. Ala. 1998) (Albritton, J.).  Judge Albritton held that the alleged right was not clearly established.  See id.

The plaintiff has not alleged a violation of clearly established federal law. The defendants move to dismiss Count One as to Officers Blue and Harrell and Chief Shaw based on the doctrine of qualified immunity.

### III.  WILFUL AND INTENTIONAL ACTS

Before discussing Counts Two and Three in depth, the defendants want to address the specific allegations of willful and intentional acts within those counts.

In paragraph 19 of Count Two, the plaintiff claims Officers Blue and Harrell, "negligently, wantonly, *willfully and/or intentionally breached the duty* owed to Phillips by their failure and/or refusal to arrest Evans on the night of February 21, 2003, upon a charge of domestic violence."  (Doc. 1 at 4, ¶ 21 (emphasis added).)

In paragraph 24 of Count Three, the plaintiff alleges, "the City of Opp and Police Chief Bill Shaw negligently, wantonly, *willfully and/or intentionally failed* to

properly train and supervise" Officers Blue and Harrell.  (Doc. 1 at 4, ¶ 24 (emphasis added).)

There is a world of difference between willfully performing an act that later results in an injury, on the one hand, and willfully performing an act with the intent to cause injury, on the other.

"'Willfulness' is the conscious doing of some act or omission of some duty, under knowledge of existing conditions *accompanied with a design or purpose to inflict injury*."  Williams v. City of Montgomery, 48 F. Supp.2d 1317, 1328 (M.D. Ala. 1999) (quoting Reed v. Brunson, 527 So. 2d 102, 119 (Ala. 1988)).

"To constitute 'willful or intentional injury,' there must be knowledge of danger *accompanied with a design or purpose to inflict injury*, whether the act be one of omission or commission."  Mobile Infirmary Med. Ctr. v. Hodgen, 884 So. 2d 801, 809 (Ala. 2003) (quoting English v. Jacobs, 82 So. 2d 542, 545 (Ala. 1955) (emphasis added)).

"There must be a knowledge of the danger *together with a design or purpose to inflict injury* in order to constitute a willful or intentional injury; it must be shown that it was intentionally and designedly done."  Sutherland v. Roth, 407 So. 2d 139, 140 (Ala. Civ. App. 1981).

> The connotation of the word "willful" as we used it and as it appears almost invariably in legal phraseology is one of premeditated wrong, an act done with evil intent or bad motive or purpose, unlawful, and without legal justification. *It implies not only the voluntary and intentional doing of an act, but also the intending of the result which follows from the doing of the act.*

Parker v. Sutton, 254 So. 2d 425, 431 (Ala. Civ. App. 1971) (emphasis added).

To be clear, neither count alleges that the defendants willfully or intentionally caused Phillips' death. Therefore, neither count alleges a willful or intentional tort.

The allegation that the defendants willfully or intentionally breached legal duties is a claim of wantonness. "'Wantonness' has been defined … as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." See Alfa Mutual Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala. 1998).

If the defendants consciously, or knowingly, breached a duty, then they may have acted wantonly, provided they also knew that an injury would probably result. However, an allegation of a willful or intentional breach of a legal duty, without an allegation of intent to inflict injury, does not plead a willful or intentional tort.[1] See Roe v. Lewis, 416 So. 2d 750, 754 (Ala. 1982) (holding willfulness "denotes an intention to cause injury").

The defendants move to declare that the plaintiff has not alleged a willful or intentional tort in Counts Two and Three.

## IV. COUNT TWO

Count Two involves state law causes of action. It alleges that Officers Blue and Harrell "negligently, wantonly, willfully, and/or intentionally" breached legal duties to arrest Marcellous Evans for (1) domestic violence and (2) outstanding arrest warrants. (See Doc. 1 at 4, ¶ 19.)

---

[1]   It seems unlikely that the plaintiff could, consistent with the requirements of Rule 11, allege that the defendants intended to cause Phillips' death. (See Fed. R. Civ. P. 11.)

For the reasons discussed in § III, <u>supra</u>, Count Two alleges the common law torts of negligence and wantonness against Officers Blue and Harrell. There is no allegation that the officers intended to harm Phillips.

## A. Statute of Limitations

For the reasons stated in § II(A) <u>supra</u>, the two-year statute of limitations bars the negligence claim. Assuming the plaintiff was entitled to the full benefit of Code of Alabama § 6-2-14's six-month tolling period, the negligence claim became time-barred no later than August 24, 2005. <u>See</u> Ala. Code § 6-2-38(*l*) (1975). The defendants move to dismiss the negligence claim based on the statute of limitations.

## B. Absence of Legal Duty

The wantonness claim also fails, because the duty alleged in the complaint is non-existent under Alabama law. There is no common law duty to arrest whenever a crime has been committed. Such a rule would require police officers to arrest for every violation, however slight.

Likewise, there is no statutory duty to arrest under the facts alleged. Assuming *arguendo* that a statutory duty does exist, a violation would only support a claim for statutory negligence. Alabama law does not recognize a cause of action for statutory wantonness. <u>See</u> <u>Norris v. City of Montgomery</u>, 821 So. 2d 149, 156 (Ala. 2001) ("In <u>Thetford</u>, this court recognized a cause of action against a municipality and its law-enforcement officials for statutory negligence; it did not

recognize one for statutory wantonness.").  Because the plaintiff's negligence claim is time-barred, no viable cause of action would remain.

However, there is no statutory duty to arrest for domestic violence or an outstanding warrant in the first place.

The elements of a claim for statutory negligence are:

(1) The trial judge must determine as a matter of law that the statute was enacted to protect a class of persons which includes the litigant seeking to assert the statute;

(2) The trial judge must find the injury was of a type contemplated by the statute;

(3) The party charged with negligence conduct must have violated the statute; and

(4) The jury must find the statutory violation proximately caused the injury.

Thetford v. City of Clanton, 605 So. 2d 835, 841-42 (1992).

The allegation of failure to arrest for domestic violence cannot satisfy the third requirement under any set of facts.  Alabama law never mandates an arrest for domestic violence.  Officers Blue and Harrell did not violate a statute.

The pertinent Alabama statute says, "An officer **may** arrest a person without a warrant … (8) When an offense involves domestic violence."  Ala. Code § 15-10-3 (1975) (emphasis added).  "When a law enforcement officer investigates an allegation of domestic violence, **whether or not an arrest is made**, the officer **shall make a written report** of the alleged incident, including a statement of the complaint, and the disposition of the case."  Ala. Code § 15-10-3(c) (1975) (emphasis added).

The United States District Court for the Middle District of Alabama already rejected the plaintiff's "duty to arrest" argument in <u>Williams v. City of Montgomery</u>, 48 F. Supp.2d 1317, 1326 (M.D. Ala. 1999).  Construing § 15-10-3, the court held, "The terms of the statutes are discretionary – providing that an officer 'may' take immediate action, and the statutes do not create a mandatory duty."  <u>Id.</u>  "The provisions merely allow a police officer to take immediate action to arrest a suspect if, in the exercise of the police officer's discretion, circumstances warrant such immediate action.   [The officer] was simply not under a statutory duty to take immediate action."  <u>Id.</u>

Alabama law mandates *only a report* for incidents of alleged domestic violence.  The law does not impose a duty to arrest.

Likewise, there is no mandatory duty to arrest on outstanding warrants:

> An officer ***may*** execute a warrant of arrest on any day and at any time; but in doing so, he must inform the defendant of his authority and, if required, must show the warrant. If an officer executing an arrest warrant is refused admittance after notice of his authority and purpose, he may break an outer or inner door or window of a dwelling house in order to make the arrest.

Ala. Code § 15-10-2 (1975) (emphasis added).

A statute's use of the permissive term "may," as opposed to the mandatory term "shall," evinces the legislature's intent to grant discretion to the decision maker.  <u>See</u> <u>Malsch v. Bell Helicopter Textron, Inc.</u>, No. 1031854, 2005 Ala. LEXIS 96, *16 (Ala. June 17, 2005) ("Notably, the statute uses the permissive 'may,' as opposed to the mandatory 'shall,' thus evincing the legislature's intent to bestow upon the trial court some measure of discretion in deciding when to impose those conditions."); <u>Ex parte Van Am. Ins. Co.</u>, 843 So. 2d 180, 185 (Ala. 2002) (holding

statute's use of word 'may,' rather than 'shall,' permits decision maker to choose its course of action); Ex parte James, 836 So. 2d 813, 831 (Ala. 2002) ("the word 'may' denotes a permissive act, as opposed to a mandatory act").  Neither the domestic violence statute nor the arrest warrant statute imposes a mandatory duty to arrest.

The negligence claim is barred by the statute of limitations.  The negligence and wantonness claims are barred by the absence of a predicate legal duty.  The defendants move to dismiss Count Two for failure to state a claim upon which relief can be granted.

### C.  City of Opp and Chief Shaw

Count Two does not mention the City of Opp or Chief Shaw.  The defendants move to declare that Count Two does not state a claim against the City of Opp or Chief Shaw.

### D.  Immunity

The defendants contend the court is not required to reach the immunity issue, because the plaintiff has not identified any recognized legal duty that they could have breached.

If the court finds otherwise, Alabama law confers State-agent immunity for the negligence and wantonness claims:

(a) *Every peace officer*, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or

employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, *shall at all times be deemed to be officers of this state*, and as such *shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.*

(b) *This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.* No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off-duty hours.

Ala. Code § 6-5-338 (1975) (emphasis added).

In <u>Ex parte Cranman</u>, the Alabama Supreme Court provided the framework

for State-agent immunity analysis:

> ***A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's***
>
> > (1) formulating plans, policies, or designs; or
> >
> > *(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:*
> >
> > > (a) making administrative adjudications;
> > >
> > > (b) allocating resources;
> > >
> > > (c) negotiating contracts;
> > >
> > > *(d) hiring, firing, transferring, assigning, or supervising personnel; or*
> >
> > (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or

regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

**(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons;** or

(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000) (emphasis added).

"Since Cranman, we analyze immunity issues in terms of State-agent immunity, rather than under the dichotomy of ministerial versus discretionary functions."  Howard v. City of Atmore, 887 So. 2d 201, 203 (Ala. 2003).

"The statute shields every defendant who (1) is a peace officer, (2) is performing law enforcement duties, and (3) is exercising judgment and discretion."  Howard v. City of Atmore, 887 So. 2d 201, 204 (Ala. 2003).

### 1. Officers Blue and Harrell

In an effort to overcome the officers' State-agent immunity, the plaintiff *conditionally* alleged that they "acted in bad faith, with malice or willfulness."  (Doc. 1 at 4, ¶ 21.)

As a threshold matter, the allegations of malice, willfulness, and bad faith do <u>not</u> prevent the court from dismissing the negligence and wantonness claims. Should a jury find negligence or wantonness, it would necessarily conclude that the officers acted with a lesser mental state than willfulness, malice, or bad faith.

The doctrine of State-agent immunity shields the officers from liability based on lesser mental states.  <u>See</u> <u>Norris v. City of Montgomery</u>, 821 So.2d 149, 156 (Ala. 2001) ("Even more significantly, § 6-5-338(a), which immunizes peace officers from tort liability for conduct involving the exercise of discretion, makes no exception for wantonness.").

The only question is whether, under the facts alleged, the state law claim against Officers Blue and Harrell should proceed under the theories of willfulness, malice, and bad faith.

As discussed in § III, <u>supra</u>, "'Willfulness' is the conscious doing of some act or omission of some duty, under knowledge of existing conditions *accompanied with a design or purpose to inflict injury*."  <u>Williams v. City of Montgomery</u>, 48 F. Supp.2d 1317, 1328 (M.D. Ala. 1999) (quoting <u>Reed v. Brunson</u>, 527 So. 2d 102, 119 (Ala. 1988)).  The plaintiff has not pled any facts that could possibly support a finding of willfulness.

Likewise, "Legal malice may be defined as 'the intentional doing of a wrongful act without just cause or excuse, *either with an intent to injure the other party or under such circumstances that the law will imply an evil intent.*"  Williams v. City of Montgomery, 48 F. Supp.2d 1317, 1328 (M.D. Ala. 1999) (quoting Empiregas, Inc. v. Freely, 524 So. 2d 626, 628 (Ala. 1988)).  The complaint does not allege any facts that show an intent to injure, or an evil intent.

"'Bad faith,' as cited by *Black's Law Dictionary* and adopted by the Alabama Supreme Court, 'contemplates a state of mind affirmatively operating with furtive design or ill will.'"  Williams v. City of Montgomery, 48 F. Supp.2d 1317, 1328 (M.D. Ala. 1999) (quoting In re Sheffield, 465 So. 2d 350, 359 (Ala. 1984)).  None of the alleged facts indicates that Officer Blue or Officer Harrell acted with bad faith or ill will.

The defendants realize that, under Federal Rule of Civil Procedure 9(b), "Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  However, the plaintiff's complaint only makes a ***conditional*** allegation of malice, bad faith, or willfulness.

Specifically, the plaintiff pleads, "***Should the arrest of Evans be determined to be a discretionary function,*** Plaintiff believes and avers that the Defendant police officers acted in bad faith, with malice or willfulness."  (Doc. 1 at 4, ¶ 21.)

In other words, the plaintiff pleads that the officers' mental states on the night of February 21, 2003 depend upon the district court's determination, today, of whether the decision to arrest was ministerial or discretionary.

22

The defendants contend that such conditional allegations are not sufficient to overcome State-agent immunity.

In any event, the individual officers should not be forced to engage in expensive and time-consuming litigation over a fact-pattern that could not, under the wildest imagination, support a finding of malice, bad faith, or willfulness. (The defendants are aware of no other case in which white police officers have been accused of acting with malice and bad faith by *declining* to arrest an African-American.)

If the court decides not to dismiss Count Two entirely, the defendants move to stay discovery on all non-immunity issues pending a determination of immunity.

The "driving force" behind the defense of qualified immunity is the desire "that insubstantial claims against government officials be resolved prior to discovery and on summary judgment if possible." Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987). "Until this threshold immunity question is resolved, discovery should not be allowed." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The United States Court of Appeals for the Eleventh Circuit has accorded state law immunity defenses a priority similar to that of the federal qualified immunity defense. See Sheth v. Webster, 145 F.3d 1231, 1235-38 (11th Cir. 1998) (noting "the immunity at issue is akin to qualified immunity" and allowing interlocutory appeal of denial); Taylor v. Adams, 221 F.3d 1254, 1260 n.9 (11th Cir. 2000) ("Discretionary-function immunity arising under Alabama law is, like qualified immunity arising under federal law, immunity from suit. Therefore, the same principles of federal law governing an appeal of the denial of qualified immunity at

the summary judgment stage also govern an appeal of the denial of Alabama discretionary-function immunity at the same stage.")

The defendants request an early determination of their immunity before other discovery is allowed.


### 2.  Chief Shaw

If the Court finds any claims against Chief Shaw in Count II, they should be dismissed.  There is no allegation of malice, willfulness or bad faith against Chief Shaw.  There is no dispute as to his immunity under § 6-5-338.


### 3.  City of Opp

Negligence and wantonness do not overcome State-agent immunity.  See Norris v. City of Montgomery, 821 So. 2d 149, 156 (Ala. 2001) ("Even more significantly, § 6-5-338(a), which immunizes peace officers from tort liability for conduct involving the exercise of discretion, makes no exception for wantonness.")

To the extent that Officers Blue and Harrell could have acted negligently or wantonly, the City is entitled to immunity under § 6-5-338(b).  See Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

To the extent that Officers Blue and Harrell could have acted with a higher degree of culpability than negligence, such as malice, willfulness, bad faith, or even wantonness, the City of Opp is also immune under § 11-47-190:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the *neglect, carelessness or unskillfulness* of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty… .

Ala. Code § 11-47-190 (1975) (emphasis added).

The combined effect of §§ 6-5-338 and 11-47-190 creates a *Catch-22* for plaintiffs. Nevertheless, the United States District Court for the Middle District of Alabama has recognized that paradox as the law. See <u>Hardy v. Town of Hayneville</u>, 50 F. Supp.2d 1176, 1201-02 (M.D. Ala. 1999).

## V. <u>COUNT THREE</u>

The plaintiff's final count alleges that the City of Opp and Chief Shaw "negligently, wantonly, willfully and/or intentionally failed to properly train and supervise" the defendant officers. (Doc. 1 at 4, ¶ 24.) Once again there is no allegation of intent to cause injury. For the reasons discussed in § III, <u>supra</u>, Count Three only alleges claims of negligence and wantonness.

### A. *Statute of Limitations*

For reasons discussed above, (<u>see</u> <u>supra</u> §§ II(A) and IV(A)), the negligence claim is time-barred. The defendants move to dismiss the negligence claim based on the statute of limitations.

*B. Causation*

Because Officers Blue and Harrell did not owe legal duties to arrest, any alleged failure to train or supervise them could not have proximately caused the plaintiff's alleged damages.  See Voyager Ins. Cos. v. Whitson, 867 So. 2d 1065, 1073 (Ala. 2003) ("A party alleging negligent or wanton supervision and hiring must also prove the underlying wrongful conduct of employees.").

The defendants move to dismiss Count Three because the plaintiff has not alleged an underlying tortious act by the individual officers.

*C. Absence of Employment Relationship with Chief Shaw*

"Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship."  Ott v. City of Mobile, 169 F. Supp.2d 1301, 1315 (S.D. Ala. 2001).  "A supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of 'master' is restricted to one who is actually or essentially the employer of the servant."  Id.  "Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate."  Id.

Chief Shaw moves to dismiss Count Three because, as a matter of law, he did not have a legal duty to train and supervise Officers Blue and Harrell.

*D.  State-agent Immunity*

The doctrine of State-agent immunity also applies to the training and supervision claims:

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> …
>
> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>
> …
>
> (d) hiring, firing, transferring, assigning, or supervising personnel; or

Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000); see also Ala. Code § 6-5-338 (1975).

1.  Chief Shaw

In Count Three, the plaintiff claims the City of Opp and Chief Shaw negligently and wantonly failed properly to train and supervise Officers Blue and Harrell.  (See Doc. 1 at 4, ¶ 24.)  There is no allegation that Chief Shaw acted maliciously, willfully, or in bad faith.

Claims of negligent and wanton training and supervision fall squarely within the doctrine of State-agent immunity.  "It cannot be seriously contested that decisions concerning hiring, training, and supervision of officers fall within the discretionary authority of the Chief of Police."  Hardy v. Town of Hayneville, No. 99-A-86-N, 1999 U.S. Dist. LEXIS 4219, at *22 (M.D. Ala. Apr. 1, 1999).

Section 6-5-338's coverage extends beyond simple negligence: "Even more significantly, § 6-5-338(a), which immunizes peace officers from tort liability for conduct involving the exercise of discretion, makes no exception for wantonness." Norris v. City of Montgomery, 821 So. 2d 149, 156 (Ala. 2001).

Because hiring and training are exactly the sort of decisions for which § 6-5-338 provides immunity, Chief Shaw is entitled to immunity against the negligence and wantonness claims in Count Three.

### 2.  City of Opp

The City of Opp is also entitled to immunity against the claims in Count Three.  "It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune."  Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003). Because § 6-5-338(a) affords immunity to Chief Shaw, subsection (b) also affords immunity to the City of Opp.

The defendants move to dismiss Count Three in its entirety based on the doctrine of State-agent immunity.

### E.  Statutory Immunity – § 11-47-190

To the extent the allegations against the City of Opp exceed simple negligence, they are also barred by § 11-47-190:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the *neglect, carelessness or unskillfulness* of some agent, officer or employee of the municipality

engaged in work therefor and while acting in the line of his or her duty… .

Ala. Code § 11-47-190 (1975) (emphasis added).  Based on § 11-47-190, the City of Opp moves to dismiss any claims beyond simple negligence in Count III.

## VI.  MOTION TO DISMISS ALL STATE LAW CLAIMS

The defendants move to dismiss all state law claims because the plaintiff did not file a sworn statement of claim with the municipal clerk within six months of the alleged incident:

> All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. *Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.*

Ala. Code § 11-47-23 (1975) (emphasis added).

The requirements for filing a claim are straightforward:

> No recovery shall be had against any city or town on a claim for personal injury received, unless a *sworn statement be filed with the clerk by the party injured or* **his personal representative in case of his death** stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed.

Ala. Code § 11-47-192 (1975) (emphasis added).

Reading §§ 11-47-23 and 11-47-192 together, Phillips' personal representative was required to file a sworn statement with Opp's municipal clerk within six months after the state law claims accrued.  The complaint alleges that Phillips died no later than February 24, 2003.  (See Doc. 1 at 2, ¶ 11.)  At the latest, the claim deadline expired six months later – on August 24, 2003.

*A. Municipality*

On or about August 21, 2003, the City of Opp received a sworn claim from a woman named Bonnie Jackson, who identified herself as Phillips' mother.[2] Jackson is not the personal representative of Phillips' estate.  (<u>See</u> Doc. 1 at 2.) She is not a party to this action.  (<u>See</u> Doc. 1 at 1-5.)  Jackson's claim does not satisfy the requirements of §§ 11-47-23 and 11-47-192.

The defendants move to dismiss all state law claims against the City of Opp – Counts Two and Three – based on the plaintiff's failure to comply with §§ 11-47-23 and 11-47-192.

*B. Individual Defendants*

The City also moves to dismiss all negligence claims against Officers Blue and Harrell and Chief Shaw based on the plaintiff's failure to file a sworn claim.

The City is legally obligated to indemnify the individual defendants from the negligence claims:

> Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, and while operating a motor vehicle or equipment engaged in the course of his employment, such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit. In no event shall a municipal corporation of the state be required to provide defense and indemnity for employees who may be sued for damages arising out of actions which were either intentional or willful or wanton.

Ala. Code § 11-47-24 (1975).

---

[2]    At this point, counsel for the defendants does not know the exact date the claim was filed. The notary block indicates it was signed on August 21, 2003.  For purposes of this motion, the court may assume that the claim was filed that day.

The municipality's defense and indemnity obligation applies to all negligence claims against municipal employees, not merely motor vehicle accidents.  See Benson v. City of Birmingham, 659 So. 2d 82, 85 (Ala. 1995).

The defense and indemnity statute was enacted in 1988.  See Ala. Code § 11-47-24 (1975).  Before 1988, the Alabama Supreme Court had held that a plaintiff's failure to file a sworn claim did not bar claims against individual municipal employees.  See Harris v. City of Montgomery, 435 So. 2d 1207, 1214 (Ala. 1983). The Alabama Supreme Court reasoned, "We are not persuaded that the claim against the officer is in effect a claim against the City."  Id.

After the enactment of § 11-47-24 in 1988, however, a negligence claim against the officer became, in effect, a claim against the city.  The Alabama Supreme Court has not revisited its statutorily undermined Harris holding since the passage of § 11-47-24.

The Alabama Supreme Court's treatment of a closely related, parallel issue indicates that it would abandon the Harris holding in light of § 11-47-24.

Prior to the amendment of § 11-47-190 in 1994 to extend the $100,000 cap on municipal liability to claims against municipal employees, § 11-93-2 provided the only limitation on municipal liability:

> The recovery of damages under any judgment against a governmental entity shall be limited to $ 100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $ 300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence.

Ala. Code § 11-93-2 (1975).  Section 11-93-2 said nothing about limiting liability on claims against municipal employees.

For a period of time beginning with the enactment of § 11-47-24 in 1988 and ending with the amendment of § 11-47-190 in 1994, municipalities were legally required to indemnify their employees from negligence claims, but apparently, there was no cap on the amount for which an employee could be liable. Thus, a municipality's own liability could be capped at $100,000 in a given case, while the municipality was theoretically required to indemnify its employee for amounts above $100,000. That paradox reached the Alabama Supreme Court in <u>Benson v. City of Birmingham</u>, 659 So. 2d 82 (1995).

In <u>Benson</u>, the plaintiff obtained a wrongful death jury verdict against the city and its police officer in the amount of $1.6 million. <u>See</u> <u>Benson</u>, 659 So. 2d at 83. Although § 11-93-2 capped the city's own liability at $100,000, the plaintiff argued that § 11-47-24 obligated the city to indemnify the officer for the balance of the judgment. <u>See</u> <u>id.</u> at 84. The Alabama Supreme Court disagreed.

The Alabama Supreme Court explained that, in order to hold the city liable for the overage under § 11-47-24, it would have to hold that the legislature intended to repeal § 11-93-2 when it enacted § 11-47-24. <u>See</u> <u>id.</u> at 86. It was not willing to do that: "The need to preserve the public coffers does not disappear simply because the plaintiff has proceeded against a negligent employee of the municipality rather than, or in addition to, proceeding directly against the municipality." <u>Id.</u>

The Alabama Supreme Court concluded, "For § 11-93-2 to be given proper effect, the cap must be applicable to indemnity actions." <u>Id.</u> "[I]f plaintiffs were able to circumvent the cap simply by naming an employee as a defendant and then

requiring the city to indemnify the employee for the entire amount of a large judgment, the cap would effectively be repealed." Id.

The same analysis applies in this case. In order for the sworn claim requirement to be effective in light of § 11-47-24's employee indemnification requirement, it must also extend to negligence claims against the individual employees. Otherwise, a plaintiff could circumvent the sworn claim requirement simply by suing individual municipal employees and then collecting from the municipality through § 11-47-24.

The City of Opp moves to dismiss all state law negligence claims – Counts Two and Three – against Officers Blue and Harrell and Chief Shaw based on the plaintiff's failure to file a sworn claim. In the alternative, the City of Opp moves to certify this question to the Alabama Supreme Court.

## VII. MOTION TO STRIKE – DAMAGES

### 1. State Law Damages Cap

The *ad damnum* clauses of Counts Two and Three seek $5,000,000 in compensatory and punitive damages from the defendants. Under Alabama law, damages are capped at $100,000 for claims against municipalities and their employees:

> no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person

Ala. Code § 11-47-190 (1975).

The defendants move to strike the $5,000,000 demand.  The defendants further move to declare that the total amount potentially recoverable from the defendants collectively, under the state law claims, is $100,000.

### 2.  Punitive Damages Claims Against City

Counts One, Two, and Three all seek punitive damages from the City of Opp.  Under both federal and state law, punitive damages cannot be awarded against municipalities.  See Ala. Code § 6-11-26 (1975); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

The defendants move to strike all punitive damages claims against the City of Opp.

### VIII.  CONCLUSION

For the foregoing reasons, the defendants move to dismiss the complaint with prejudice, to strike the designated damages claims, and to limit discovery.

/s/ James H. Pike
James H. Pike  (PIK003)
Attorney for Defendants
City of Opp, Alabama, Jason C. Blue,
David Harrell, and Bill Shaw

OF COUNSEL:

COBB, SHEALY, CRUM & DERRICK, P.A.
P.O. Box 6346
Dothan, Alabama  36302-6346
Tel. (334) 677-3000
Fax (334) 677-0030
Email: jpike@cobb-shealy.com

## **CERTIFICATE OF SERVICE**

I, James H. Pike, certify that on October 23, 2005, I electronically served a

copy of this document on:

Charles Matthew Brunson
JARED & BRUNSON
P.O. Box 358
Elba, Alabama 36323

Steve Blair
P.O. Box 310843
Enterprise, Alabama 36331

**/s/ James H. Pike**
James H. Pike